IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Michael Petramala,

    Plaintiff,

vs.

City of Mesa., et al.,

    Defendants.

No. CV-02-2128-PHX-LOA

**ORDER**

This matter arises on Defendant City of Mesa's Motion For Summary Judgment (document # 39) as to Plaintiff Michael Petramala's remaining allegations of unlawful racial discrimination and disability discrimination. The Court has reviewed and considered the motion and the supporting statement of facts, Plaintiffs's Response in opposition thereto and his statement of facts, Defendant's reply, and the file as a whole. After reviewing the record, the Court finds that summary judgment is appropriate

### **PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges racial and disability discrimination against Defendant pursuant to Title VII of the Civil Rights Act and the Americans with Disabilities Act, respectively. Specifically, he alleges that Defendant the City of Mesa and several individual Defendants failed to hire him as a Police Officer Recruit on the basis of his race and/or disability. Plaintiff also asserts a state law defamation claim. (document # 1) The district court previously granted Defendant's motion to dismiss as to Plaintiff's Title VII and ADA claims

against Defendants Cost, Westerhoff, Skornik, and Strauss. (document # 20) The Court also dismissed Plaintiff's state law defamation claim. (Id.)

The pending motion challenges the merits of Plaintiff's remaining allegations of race and disability discrimination. Plaintiff responds that issues of fact exist for the trier of fact to resolve.

## BACKGROUND

Plaintiff, proceeding pro se, alleges that Defendant discriminated against him on the basis of race and disability when he applied for employment as a City of Mesa Police Officer. (document # 1) Plaintiff claims that Defendant violated the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964. In October of 2000, Plaintiff applied for a position as a Police Officer-Recruit with the Mesa Police Department. (DSOF ¶ 3, Exh. 2[1]) As part of the hiring process, Plaintiff completed the written application, the written examination, initial oral interview, and the initial background interview. (DSOF ¶ 4, Exh. 2, 3) Plaintiff also completed a written Polygraph Applicant Questionnaire. (DSOF ¶ 5, Exh. 3 attachment A) This questionnaire contains detailed questions regarding employment history and arrest history. (DSOF ¶ 6, Exh. 3 attachment A) Plaintiff was disqualified from the hiring process after the initial background interview was completed. (DSOF ¶ 7, Exh. 4) Plaintiff did not proceed to the physical component of the hiring process.

Plaintiff asserts that Defendant refused to hire him because he is Hispanic and disabled. (document # 1) Plaintiff's Complaint does not identify his disability, however, Plaintiff's Response to the Motion for Summary Judgment indicates that he is photosensitive. (document # 41) Plaintiff also appears to allege that Defendant's requirement that he sign a Waiver of Liability and Release Form as a new employment applicant was discriminatory. (DSOF ¶ 9) Defendant states that all applicants complete this form to permit Defendant to

---

[1] Citations to "DSOF" are to Defendant's Statements of Fact in Support of the Motion for Summary Judgment and the supporting exhibits. (document # 40)

contact former employers and to investigate "health, family, personal habits, and reputation" to determine fitness for employment. (DSOF ¶ 10, Exh. 4 attachment B) Defendant did not use the Waiver of Liability and Release which Plaintiff executed in this case because Plaintiff was disqualified from the hiring process at an early stage. (DSOF ¶ 12) Kenneth Cost, the officer assigned to complete Plaintiff's background interview, recommended that Plaintiff's application not be forwarded "in the hiring process for a polygraph or further consideration." (DSOF ¶ 15, Exh. 3) Cost explained that Plaintiff was "deceptive" in answering questions about the facts surrounding his two prior arrests, "lacked eye contact" during the interview, and "seemed very tense and angry at times." (DSOF ¶ 16, Exh. 3) He also noted that Plaintiff had a poor work history of not holding a job for more than three months. (DSOF ¶ 17, Exh. 3)

Plaintiff's employment application listed two prior arrests. (DSOF ¶ 18, Exh. 2) During Plaintiff's background interview, Cost asked Plaintiff about the nature of his arrests. (DSOF ¶ 19, Exh. 3 attachment B) Plaintiff's first arrest was in 1993 by the U.S. State Department for attempting to obtain a U.S. passport by providing false information. (Id.) The second arrest was in 1998 by the U.S. border patrol for damaging government property. (Id.) Before his interview with Officer Cost, Plaintiff had provided a written explanation for these two arrests in the polygraph questionnaire. (DSOF ¶ 22, Exh. 3 attachment A) When Officer Cost asked Plaintiff to clarify the two arrests, Plaintiff provided information which contradicted his written statement and became agitated and acted "strange." (DSOF ¶ 23, Exh. 3 attachment B)

The ultimate decision regarding whether Plaintiff would advance in the hiring process was made by a Hiring Board. (DSOF ¶ 24, Exh. 4) In making its decision, the Hiring Board considered the pre-polygraph applicant questionnaire, background investigation interview, and work history. (DSOF ¶ 25) Defendant states that during the hiring process, including the background interview, neither Officer Cost nor the hiring board was aware that Plaintiff was disabled. (DSOF ¶ 27, Exhs. 3, 4) In view of Plaintiff's behavior during the

- 3 -

background interview, his negative arrest history, and his unstable work history, Plaintiff was disqualified from the hiring process and was sent a letter informing him of Defendant's decision. (DSOF ¶ 28, Exh. 4)

### LAW ON SUMMARY JUDGMENT

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Jesinger, 24 F.3d at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also, Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. Celotex, 477 U.S. at 323.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but. . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Brinson v. Lind Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not

significantly probative, summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." <u>Id</u>. at 255 (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

Finally, facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1029 (9th Cir. 2001).

## EVIDENCE CONSIDERED ON MOTION FOR SUMMARY JUDGMENT

Before reaching the merits of the motion for summary judgment, the court notes that Defendant has filed a Motion to Strike Plaintiff's Statement of Facts. (document # 46) Defendant argues that under Fed.R.Civ.P. 56, on a motion for summary judgment a court may consider facts which are set forth in an affidavit or a deposition. Unsworn and unproven assertions in a memorandum are not such facts. (document # 46)

In opposing a motion for summary judgment, the nonmoving party need not produce evidence in a form which would be admissible at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). A motion for summary judgment may be opposed by any of the evidentiary materials listed in Rule 56(c), although mere pleadings are insufficient. <u>Id.</u> Rule 56(c) provides that the court may consider pleadings, depositions, answers to interrogatories, admissions and affidavits in considering a motion for summary judgment. Fed. R. Civ. P. 56(c). The Ninth Circuit has considered statements in a verified motion or a verified complaint in opposition to a motion for summary judgment. See, <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995). In such circumstances, the court has required that the party making the statement swear that it is "true and correct" and based on personal knowledge. <u>Id.</u>; <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). In <u>Curnow v. Ridgecrest Police</u>, 952 F.2d 321, 323-24 (9th Cir. 1991), the court held that documents submitted in opposition to a motion for summary judgment met the requirements of Rule 56(c) affidavits because they were made on personal knowledge and were made under oath. Specifically,

1  in Curnow, the court considered a statement which plaintiff had made in response to
2  questions by her attorney. The statement was recorded by a shorthand reporter who had
3  sworn Plaintiff to tell the truth. Id. at 323.
4       Here, in opposition to the Motion for Summary Judgment, Plaintiff has submitted
5  a Response (document # 41) and a Statement of Facts. (document # 43) Both documents
6  are signed by Plaintiff. However, neither document is notarized or otherwise indicates that
7  when Plaintiff made the statement he "swore" that is "true and correct" and based on his
8  personal knowledge. See, Schroeder, 55 F.3d at 460. As such, neither Plaintiff's Response
9  nor his Statement of Facts is verified or otherwise meets the criteria of Rule 56(c). The
10 Court, therefore, finds that it is appropriate to grant Defendant's motion to strike Plaintiff's
11 Statement of Facts.

## ANALYSIS

### I. Racial Discrimination/Title VII

Plaintiff contends that Defendant discriminated against him on the basis of his race. Plaintiff is Hispanic.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." See, 42 U.S.C. Section 2000e-2(a)(1); Llamas v. Butte Community College District, 238 F.3d 1123, 1126 (9th Cir. 2001). A plaintiff may show a violation of Title VII by proving disparate treatment, disparate impact, or by establishing a hostile work environment. See, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). Disparate treatment involves intentional discrimination. Id. Plaintiff in this case alleges disparate treatment.

To establish a claim of disparate treatment, the Ninth Circuit has provided that a plaintiff must show that "an individual [has been] singled out and treated less favorably than others similarly situated on account of [race]." Pejic v. Hughes Helicopters, Inc., 840

1  F.2d at 671; Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir. 1982).
2  Direct or circumstantial proof of discriminatory motive is required. Spaulding v. University
3  of Wash., 740 F.2d 686, 700 (9th Cir. 1984).
4        In a disparate treatment case, the courts apply the burden-shifting analysis set
5  forth in McDonnell Douglas Corporation v. Green, 411 U.S. 732, 802-05 (1973) which the
6  9th Circuit has explained as follows:

> In order to prevail in a Title VII disparate treatment case, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision. If the defendant carries its burden, the plaintiff is then afforded an opportunity to demonstrate that the "assigned reason" was "a pretext or discriminatory in its application." Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir.1985) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807, 93 S.Ct. 1817, 1826-27, 36 L.Ed.2d 668 (1973)) (emphasis in Diaz ). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't. of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); Casillas v. United States Navy, 735 F.2d 338, 342 (9th Cir.1984). " '[T]he district court must decide which party's explanation of the employer's motivation it believes.' " Casillas, 735 F.2d at 342 (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 717, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983)).

Pejic v. Hughes Helicopters, Inc., 840 F.2d at 671. To withstand summary judgment the employee must offer evidence that "gives rise to an inference of unlawful discrimination." Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employee fails to allege "specific facts" that establish a prima facie case, summary judgment is appropriate. Yartzoff v. Thomas, 809 F.2d 1371, 1374 (9th Cir. 1987).

      To establish a prima facie case of discrimination in the employment context of a discriminatory failure to hire Plaintiff must show that: (1) he belongs to a protected class; (2) he sought and was qualified for a position of employment; (3) he was denied employment; and (4) after rejection, the position remained open to individuals outside of the protected class with like qualifications. Pejic v. Hughes Helicopters, Inc., 840 F.2d at 671; Chuang v. University of California Davis, 225 F.3d 1115, 1122 (9th Cir. 2000).

1   A disparate treatment plaintiff can survive summary judgment without producing
2   any evidence of discrimination beyond that constituting his prima facie case, if that evidence
3   raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.
4   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, ----, 120 S.Ct. 2097, 2108 (2000)
5   (holding that if fact finder rejects employer's proffered nondiscriminatory reasons as
6   unbelievable, it may infer "the ultimate fact of intentional discrimination" without additional
7   proof of discrimination). While the plaintiff always retains the burden of persuasion, Reeves,
8   530 U.S. at ----, 120 S.Ct. at 2106, he does not necessarily have to introduce "additional,
9   independent evidence of discrimination" at the pretext stage. Id. at 2109; Chuang v.
10  University of California Davis, 225 F.3d at 1126.

11  Thus, the issue is whether Plaintiff has established a prima facie case of
12  discrimination and whether there is a genuine issue of material fact sufficient to foreclose
13  summary judgment. Fong v. American Airlines, Inc., 626 F.2d 759, 761 (9th Cir.1980). The
14  prima facie case is established by a preponderance of the evidence. Burdine, 450 U.S. at
15  252-53; Casillas, 735 F.2d at 343.

16  **II. Analysis of Title VII Claim**

17  First, Plaintiff, as a Hispanic, has established that he belongs to protected class.
18  Second, it is undisputed that Defendant refused to hire him as a Police Officer-Recruit. Third,
19  the parties seem to disagree whether Plaintiff was qualified for the position. The Court will
20  assume that Plaintiff was qualified for the position and proceed to the next stage of the
21  analysis.

22  Assuming that Plaintiff established a prima facie case, at the next stage of the
23  analysis, the Court considers whether Defendant has offered a legitimate, nondiscriminatory
24  reason for its employment decision. Here, Defendant disqualified Plaintiff from the hiring
25  process after he completed the background interview. (DSOF ¶ 38) Officer Cost completed
26  Plaintiff's background interview. (Id. at ¶ 39) Cost attests that the ultimate decision that
27  Plaintiff should not advance in the hiring process was made by the entire hiring board.
28

(DSOF ¶ 40) The hiring board was comprised of Cheryl Skornik, Affirmative Action Coordinator, Det. Roy Dunkelbarger, Hiring Coordinator, attorney Roy Skagg, and Lt. Mark Mitchell, Staff Resources Commander. (DSOF ¶ 14) After Officer Cost completed Plaintiff's background interview, he recommended that Plaintiff not be recommended for hire. (DSOF ¶ 42) Officer Cost attests that his decision that Plaintiff should not continue in the hiring process was based on Plaintiff's performance during the background interview, his criminal history, and his sporadic employment history. (DSOF ¶ 44) Similarly, the hiring board rejected Plaintiff for continuation in the hiring process based on his background interview, his work history, and his polygraph questionnaire. (DSOF ¶ 25)  The Court finds that Defendant has provided a legitimate, non-discriminatory reason for not hiring Plaintiff.

Thus, under McDonnell Douglas, the burden shifts back to Plaintiff to demonstrate that the "assigned reason" was "a pretext or discriminatory in its application." Plaintiff fails to meet this burden.

Plaintiff has not offered any evidence, much less created a reasonable inference, that race played any role in his not receiving the Police Officer Recruit position. Plaintiff argues that Officer Cost lied about the reason for not hiring Plaintiff. (document # 43 ¶ 5) He also argues that "Skornik is a liar" because "[s]he originally told Plaintiff his work history was not a valid non-hiring [criteria] . . . ." (Id. at ¶ 8) Plaintiff's allegations are not supported by the record. While it may be true that a plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment, Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996), Plaintiff's bald assertions that Defendants lied is not sufficient to withstand summary judgment. Tovar v. United States Postal Service, 3 F.3d 1271, 1279 (9th Cir. 1993)(bare assertions or unsupported conclusions are not facts sufficient to support or deny a summary judgment)

Plaintiff's evidence does not raise a genuine issue of material fact regarding the truth of Defendant's proffered reasons for not hiring him. No reasonable trier of fact on this record would believe that Defendant's proffered nondiscriminatory reason for not hiring

Plaintiff was unbelievable. Thus, on this record a factfinder should not be permitted to infer "the ultimate fact of intentional discrimination" without additional proof of discrimination. Plaintiff has no claim for failure to hire based upon race. Defendant's motion will be granted as to Plaintiff's Title VII claim.

**III. Disability Discrimination**

Plaintiff, who is photosensitive, also asserts that Defendant discriminated against him on the basis of disability in violation of the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination in employment against qualified persons with a disability. 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with or without reasonable accommodation; and (3) he was subject to an adverse employment action based on his disability. Bradgon v. Abbott, 524 U.S. 624 (1998); Nunes v. Walmart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). An employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

The ADA does not require an employer to assume that an employee with a disability suffers from a limitation. Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 164-65 (5th Cir. 1996). Rather, once an employee requests an accommodation, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation. Zivkovic v. Southern California Edison Company, 302 F.3d 1080, 1089 (9th Cir. 2002)(citing Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000)(en banc), *vacated on other grounds*, 535 U.S. 391 (2002)). The same requirement applies to job applicants. Id.

An employee has the initial duty to inform the employer of a disability and the need for an accommodation before ADA liability may be imposed for failure to provide an accommodation. Jovanic v. In-Sink Erator Division of Emerson Electric, 201 F.2d 894, 899 (7th Cir. 2000); Sischo-Nowenjad v. Merced Comm. College Dist., 937 F.2d 1104 (9th Cir. 1991). In general, a plaintiff must request an accommodation before ADA liability attaches. Mole v. Buckhorn Rubber Prod., Inc., 165 F.3d 1212, 1218 (8th Cir. 1999).

Here, Defendant contends that Plaintiff never informed the City that he had any condition which might qualify as a disability under the ADA. (DSOF ¶ 30) Furthermore, Defendant states that Plaintiff never informed the City that he needed an accommodation to perform the duties of a Police Officer Recruit or that he needed an accommodation to complete the application process. (DSOF ¶ 31) Plaintiff, on the other hand, contends that when he "notice[d] that the *physical test* [was] days away [he] ask[ed] what to do about the reasonable accommodation for his photosensitivity disability." (document # 41 at 1)(emphasis added) He claims that Defendant never sent him a "reasonable accommodation form" to complete. (document # 43) He argues that "Mesa knew he was disabled and/or disregarded him as a person with a disability after he asked for the reasonable accommodation request." (document # 41, # 43) As previously discussed, Plaintiff's statements are not verified or otherwise in a format suitable for consideration on summary judgment. Moreover, even if Plaintiff did complete an accommodation request for completion of the physical component of the hiring process, that request was not known to anyone who participated in the hiring decision. Additionally, no one in the hiring process was aware of Plaintiff's disability and Plaintiff never advanced to the physical portion of the hiring process. Furthermore, Plaintiff does not allege that his disability interfered with this ability to participate in the hiring process.

Aside from Plaintiff's unsupported assertion that he requested accommodation, the record lacks any evidence that Plaintiff indeed did so. Detective Cost attests that he was unaware that Plaintiff was disabled and that Plaintiff never requested an accommodation.

(DSOF ¶ 34) Kathleen Broman, a Senior Human Resources Analyst for the City of Mesa, attests that the application which Plaintiff completed instructed applicants that if they require "reasonable accommodation" they must submit a "reasonable accommodation form" to the personnel office at least five days before the commencement of the testing process. (DSOF ¶ 35) She further attests that the City keeps a log of all employees and employee applicants who request an accommodation. Plaintiff's name does not appear on this log. (DSOF ¶ 36)

Aside from his unsupported allegations that Defendant discriminated against him based on his photosensitivity, Plaintiff provides no support for his ADA claim. Accordingly, summary judgment is appropriate on this claim. Moreover, even assuming that Plaintiff did request an accommodation for the physical component of the hiring process, his claim still fails. The decision to terminate Plaintiff was made after the initial background interview. Plaintiff was not selected to continue the hiring process and never had to complete the physical test. Thus, the evidence does not support an inference that Plaintiff's disability was a factor in the hiring process.

Assuming *arguendo* that Plaintiff were able to establish a jury question on the other elements of his ADA claim, the Court has serious doubts that Plaintiff has a "disability" within the meaning of the ADA. This issue was not raised by movant. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2); Toyota Motor Manufacturing v. Williams, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)("substantial impairment" means "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."); Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)(severely myopic plaintiffs who, with the aid of corrective lenses, could function identically to individuals without similar impairments were not disabled within meaning of ADA). While "a person whose physical or mental impairment is corrected by mitigating measures still has an

impairment, ... if the impairment is corrected it does not 'substantially limit' a major life activity' " and the person is consequently not disabled within the meaning of the ADA.). Id. at 483. Because the it finds summary judgment is appropriate on other grounds and Plaintiff has provided no meaningful information about his "disability" (photosensitivity), the Court concludes that it is not necessary to address this issue.

**IV. Waiver**

Finally, Plaintiff challenges the Defendant's use of a Wavier of Liability and Release Form during the hiring process. All job applicants complete this form to permit Defendant to contact former employers and to complete the background investigation. (DSOF ¶ 10) Defendant did not use the Waiver of Liability and Release which Plaintiff executed in this case because Plaintiff was disqualified from the hiring process at an early stage. (DSOF ¶ 12) Defendant did not use the waiver to contact any references. (DSOF ¶ 13)

Plaintiff contends that the Equal Employment Opportunity Commission ("EEOC") determination letter is presumptive evidence of Defendant's discriminatory actions. The EEOC letter states that "the Commission has previously determined that the ADA prohibits an employer from making a pre-employment medical background check or making pre-employment medical inquiries." (document # 1, Exhibit) That letter, however, is not determinative of Defendant's actions and is only an opinion that may be introduced at trial along with other evidence. An EEOC determination does not create a genuine issue of material fact.  An EEOC letter is a "highly probative evaluation of an individual's discrimination complaint." Plummer v. Western Int'l Hotels Co., Inc., 656 F.2d 502, 505 (9th Cir.1981). Such letters, however, "are not homogeneous products; they vary greatly in quality and factual detail." Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1309 (8th Cir.1984). It is within the trial court's discretion to determine the weight to be accorded such administrative proceedings. See, Bradshaw v. Zoological Soc. of San Diego, 569 F.2d 1066, 1069 (9th Cir.1978) ("[i]t remains with the district court, of course, to determine the degree

of weight to be assigned to [EEOC determinations]"). The EEOC's determination alone does not indicate that Defendant acted improperly in this case. Furthermore, Plaintiff does not dispute that Defendant never used the waiver that Plaintiff completed in this case. The evidence shows that because Plaintiff was disqualified at an early stage in the hiring process, his background investigation was not completed and the waiver was not used to collect any medical information. (DSOF ¶ 12, 13) Plaintiff does not offer any evidence to challenge Defendant's claim that it did not use the waiver in this case. (DSOF ¶ 10, 11) The Court finds that Plaintiff's execution of a waiver in this case, does not constitute evidence that Defendant discriminated against Plaintiff during the hiring process in this case where the waiver was never used.

Accordingly,

**IT IS ORDERED** that Defendant's Motion For Summary Judgment (document # 39) is **GRANTED** and that the Clerk shall enter judgment in favor of Defendant and against Plaintiff on all claims.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Statement of Facts (document # 46) is **GRANTED** and that Plaintiff's Statement of Facts (document # 43) is **STRICKEN**.

DATED this 16th day of August, 2004.

*/s/ Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge

- 14 -